# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 21-0910V

| | |
|---|---|
| JENNIFER HAMILTON,<br><br>     Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>     Respondent. | Chief Special Master Corcoran<br><br>Filed: August 8, 2024 |

*William E. Cochran, Jr., Black McLaren Jones Ryland & Griffee, P.C., Memphis, TN, for Petitioner.*

*Mark Kim Hellie, U.S. Department of Justice, Washington, DC, for Respondent.*

### FINDINGS OF FACT[1]

On February 10, 2021, Jennifer Hamilton filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") following an influenza vaccination she received on November 11, 2019. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

---

[1] Because this Fact Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Fact Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

For the reasons discussed below, I find the onset of Petitioner's shoulder pain more likely than not occurred within 48 hours of vaccination.

## I.     Relevant Procedural History

Beginning in March 2023, the parties engaged in settlement discussions, attempting to reach an agreement regarding Petitioner's claim, but were unsuccessful. *See* ECF Nos. 29, 37. Accordingly, Respondent filed his Rule 4(c) Report on September 19, 2023, arguing that Petitioner has not established entitlement to compensation because "the evidence in this case does not support a finding that Petitioner's shoulder pain began within the requisite forty-eight hours after vaccination." Rule 4(c) Report at 5.

On September 22, 2023, Petitioner filed a status report setting forth her arguments in response to Respondent's arguments in his Rule 4(c) Report. ECF No. 40. Although I gave both parties an opportunity to submit any further evidence or argument regarding the issue of onset, neither filed any additional materials. Therefore, the issue of onset is ripe for a fact ruling.

## II.    Issue

At issue is whether Petitioner's first symptom or manifestation of onset after vaccine administration (specifically pain) occurred within 48 hours as set forth in the Vaccine Injury Table and Qualifications and Aids to Interpretation ("QAI") for a Table SIRVA. 42 C.F.R. § 100.3(c)(10)(ii) (required onset for pain listed in the QAI).

## III.   Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-

2

1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. "Written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Murphy v. Sec'y of Health & Hum. Servs.*, No. 90-882V, 1991 WL 74931, *4 (Fed. Cl. Spec. Mstr. April 25, 1991), quoted with approval in decision denying review, 23 Cl. Ct. 726, 733 (1991), *aff'd per curiam*, 968 F.2d 1226 (Fed.Cir.1992)). And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such fact testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id*.

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical

records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

### IV.     Finding of Fact

I make the findings after a complete review of the record to include all medical records, affidavits, Respondent's Rule 4 report, and additional evidence and arguments filed. I find the following points to be particularly relevant:

- Petitioner received a flu vaccine in her left deltoid on November 11, 2019, at the office of her primary care provider ("PCP") in Memphis, TN. Ex. 9 at 7.

- Petitioner recalled having "pain in [her] left arm and shoulder after vaccination that increased throughout the day." Ex. 1 at ¶4. "By that afternoon/evening," she had "a very sore left arm." Ex. 14 at ¶1. On the following day, Petitioner had "significant muscle soreness and warmth in [her] left upper arm." *Id*. at ¶3.

- On December 10, 2019 (nearly a month post-vaccination), Petitioner sent a text to her mother forwarding an article about "post-flu shot shoulder pain." Ex. 11 at 4. She referenced "what's wrong with [her] shoulder." *Id*. She stated that she may need to see a doctor because "one month later and it's not a bit better." *Id*. She indicated that she planned to see her PCP, but that she would have new insurance in January. *Id*.

- Petitioner has recalled that "at some point in January 2020," she noticed improvement in her symptoms, so that her pain was "manageable during day hours." Ex. 14 at ¶9. In March 2020, Petitioner began working from home due to the covid-19 pandemic. *Id*. at ¶11.

- On March 26, 2020, Petitioner saw her PCP for a fever and sore throat. Ex. 2 at 11. She did not mention any shoulder pain. Petitioner recalled that, due to the pandemic, her visit that day was very brief and focused only on her acute symptoms. Ex. 14 at ¶12.

- Petitioner further maintains that in April 2020, she tried one night to fluff her pillow, and then suffered an increase in symptoms that "made [her] really concerned." Ex. 14 at ¶15.

- On April 21, 2020 (now over five months after her vaccination) Petitioner requested an appointment with her PCP to address "shoulder pain on the left side since November." Ex. 3 at 1. She was seen three days later, on April 24, 2020. Ex. 2 at 18. On exam, Petitioner had decreased range of motion and tenderness of her left shoulder. *Id*. at 19. She was assessed with chronic left shoulder pain, however, no treatment was recommended. *Id*. at 20. Petitioner recalled that her doctor would refer her to an orthopedist. Ex. 14 at ¶17.

- Although Petitioner did not initially receive a referral to an orthopedist, she recalls that her symptoms were not "getting worse and possibly marginally better" after her initial appointment. Ex. 14 at ¶18. In early August 2020, she recalled exacerbating her symptoms reaching for something on the floor of her car. *Id*. at ¶19. By the end of August, she placed a call to her PCP to ask about the referral to an orthopedist. *Id*.

- On August 24, 2020 (over nine months after her vaccination), Petitioner reported her left shoulder pain to an orthopedist. Ex. 4 at 3. She complained of left shoulder symptoms that "started last November when she had a flu shot." *Id*. at 4. On exam, she lacked "full range of motion in all planes," had pain with motion, and displayed mild crepitus. *Id.* at 3. She was diagnosed with adhesive capsulitis and received a steroid injection. *Id*. at 4. Petitioner was referred to physical therapy.

- Petitioner began physical therapy the following day. Ex. 4 at 50. She reported that she had a flu shot in her left shoulder, had pain for three months, "then the whole covid thing happened and she is just now getting around to it." *Id*. On exam, she had reduced range of motion and positive impingement testing. *Id*. at 51. Her plan of care included treatments three times a week for six weeks. *Id*. at 52.

Respondent argues that Petitioner has not provided preponderant evidence of onset within 48 hours "because Petitioner's first report of left shoulder pain was five and a half months after vaccination." Rule 4(c) Report at 5. Respondent also highlights an intervening appointment that Petitioner had with her PCP for a sore throat, during which she did not mention any shoulder pain, noting that Petitioner had "no persuasive reason" for not doing so. *Id*.

While Respondent is correct that Petitioner did not seek medical treatment for her shoulder pain for more than five months after her vaccination, his argument ignores probative non-medical record evidence submitted by Petitioner that her pain occurred

5

within the required period. In two affidavits, Petitioner states that her shoulder pain began the same day as her vaccination, which continued through the following days. *See* Ex. 1 at ¶4; Ex. 14 at ¶2-4. In addition, Petitioner has provided copies of text messages that she sent to her mother on December 10, 2019, one month after her vaccination. Ex. 11 at 4. In those messages, Petitioner expressed that "one month later" her shoulder was "not a bit better," suggesting that her shoulder symptoms began very close in time to her vaccination. *Id*. Finally, when Petitioner requested an appointment with her PCP for her shoulder pain, she reported "shoulder pain on the left side since November." Ex. 3 at 1.

Also compelling is the fact that when Petitioner sought treatment, she consistently attributed her shoulder pain to her flu shot. *See e.g.*, Ex. 4 at 4 (pain "started last November when she had a flu shot."). Although the records do not specifically place onset within 48 hours, they are not *contradicted* by Petitioner's affidavit testimony that she experienced pain within hours of her vaccination. In fact, the affidavit testimony provides consistent detail to the general notations in the medical records.

Petitioner did have an intervening appointment with her PCP (in March 2020) during which she did not report shoulder pain. Ex. 2 at 11. But she has persuasively noted that the visit occurred during the early part of the Covid-19 Pandemic, and she was experiencing a fever, cough, and sore throat at the time – which were symptoms of the virus. Ex. 14 at ¶12. She also has recalled the visit being brief, and focused on testing for Covid-19 and strep throat. *Id.* A careful reading of the record of that appointment corroborates Petitioner's recollection – as a nurse, a phlebotomist, and a doctor spent a combined total of nine minutes with Petitioner. Ex. 2 at 12. Under such circumstances, it is reasonable that Petitioner would not mention shoulder pain that she acknowledged "was manageable during day hours" at that time, while she was acutely ill with a potentially new virus. Ex. 14 at ¶9.

Clearly Petitioner delayed seeking care for her alleged injury. But although it is reasonable to expect that an average claimant "might seek medical treatment sooner if in fact the person was experiencing sudden post-vaccination pain," Petitioner has provided a reasonable and consistent explanation for her decision to delay formal medical treatment. When symptoms she initially believed would resolve did not, Petitioner planned to seek care once she had new health insurance. Ex. 11 at 4. Then, in early 2020, she experienced an improvement in her symptoms that rendered them manageable, which, when combined with a busy work schedule, further delayed her decision to seek care. Ex. 14 at ¶9. An aggravation in April 2020, five months after her vaccination, finally pushed her to make an appointment with her PCP. *Id*. at ¶14-15. Petitioner's delay does not preclude a finding of Table onset (although it definitely informs damages, since it suggests the injury was not severe).

Accordingly, I find there is preponderant evidence to establish the onset of Petitioner's pain occurred within 48 hours of vaccination.

## V.     Scheduling Order

**The following is ORDERED: Respondent shall file, by no later than <u>Wednesday, September 18, 2024</u>, a status report indicating how he intends to proceed in this case in light of the record and this fact ruling.** The status report shall indicate whether he is willing to engage in discussions regarding settlement or damages or remains opposed to negotiating at this time.

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master